THE CITY OF COLLINSVILLE, Plaintiff-Appellant, v. MARYLAND CASUALTY COMPANY et al., Defendants-Appellees.

(No. 74-340;

Fifth District—May 26, 1975.

Philip J. Rarick, City Attorney, of Collinsville, for appellant.

Hoagland, Maucker, Bernard & Almeter, of Alton (Robert B. Maucker and Gerald R. Walters, of counsel), for appellees.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an appeal from a judgment against the City of Collinsville on its complaint for a declaratory judgment that the Maryland Casualty Company be compelled to defend the City and pay any judgment which might be rendered in a suit filed against the City in which it was alleged that the negligence of the City resulted in the loss by fire of a building.

On November 22, 1969, a fire occurred in a commercial building owned by Noel Krapp. The building contained three furnished rental apartments and the Bluff View Market, a grocery business owned and operated by Noel Krapp and Harvey Quest. The building was located outside of but near the City of Collinsville and within the State Park Fire Protection District. Members of the district went to the scene of the fire and first attempted to control it by use of water and chemicals from their fire trucks. After these were exhausted they then connected their hoses to a nearby fire hydrant but found that it was inoperable, allegedly because employees of the City of Collinsville had earlier repaired the plug and failed to reopen a shut-off valve. The Fire Protection District did not have the key necessary for reopening the valve. The firemen then connected hoses to a hydrant approximately one block away in the territory of another fire protection district. Despite their efforts the building and its contents were consumed by fire.

Prior to the date of the fire, agreements had been signed between the City of Collinsville and the State Park Fire Protection District under which the City had the exclusive right to repair fire plugs owned by the District and under which it agreed to keep water available at the plugs. It was alleged that the hydrant involved in this action was inoperative because the City failed to reopen the shut-off valve after making repairs to the hydrant. Following the loss of the building the owner of the building and his partner in the grocery business which was conducted in the building filed suit against the City. The gist of their action is contained in Count V, paragraph 15B of their complaint where it is alleged that the City "negligently and carelessly failed to reopen the shut-off valve, even

though it should have been foreseeable that said failure would cause damage to plaintiffs' property interests."

The City then requested its insurer, The Maryland Casualty Company, to defend it in the pending action and to pay any judgment which might be rendered against the City. The company refused to defend, claiming that its policy did not cover the negligence alleged in the owner's complaint.

We have before us a single issue—did the insurance policy in question afford coverage to the City of Collinsville for the occurrence which has been described.

Page one of "General Liability Schedule-Supplement," under the heading "Premises-Operations" lists in bold type hazards which are covered by the policy and opposite each the premium for that particular hazard. One of the hazards listed is "WATERWORKS—INCLUDING OUTSIDE SALESMEN, COLLECTORS AND METER READERS—INCLUDING COMPLETED OPERATIONS *EXCEPT WITH RESPECT TO THE INSTALLATION, SERVICING, OR REPAIR OF APPLIANCES.*" (Emphasis added.) This hazard is further conditioned by a note at the bottom of the page, also in large print and denoted by an asterisk, which states that, "THIS CLASSIFICATION EXCLUDES COVERAGE FOR CLAIMS ARISING OUT OF THE USE OF OR THE EXISTENCE OF ANY CONDITION IN WATER." Page one of the General Liability Policy contains a definition of "Completed operations hazard" and as part of the definition includes the statement: "Operations which may require further service or maintenance work or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

The company argues that the negligence complained of by the owners of the building and the grocery business involve the "installation, servicing, or repair of appliances" and that a fire hydrant being an appliance, the exception operates to remove the City from coverage. Further, the company argues that the City is immune from suit under the circumstances of this loss.

■■ The City maintains that in the absence of a definition of "appliance" in the policy, the meaning of the exception in the supplement is unclear and hence brings into play the well-established rule that if there is lack of clarity in an insurance policy the uncertainty will be resolved in favor of the insured. It also maintains that the supplement does not provide the only coverage afforded by the policy and that furnishing water is a continuing operation and hence is not a "completed operation" within the terms of the policy.

With respect to this last point we must agree with the company that

the complaint against the City did not allege the absence of water but alleged negligence on the part of the City in failing to make one of its fire hydrants operative. Therefore, we will pursue this point no further.

With respect to the supplement not being the only coverage, we must refer to the rule that an insurance policy, like any other document, must be read in its entirety to determine meaning and intent. It is true, as the City states, that the policy contains a statement which says: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * bodily injury or property damage *to which the insurance applies* * * *." (Emphasis added.) Obviously this is a general statement about what the company will do. But it also states in certain language that it will indemnify the insured only if the insurance applies. Any reasonable interpretation of this language would lead one to look further in the policy for those things which are covered and for those things which are not covered. The supplement referred to above lists those things to which the insurance applies. The City does not claim that the supplement is not a part of the policy and that it is not bound by it.

■■ We have no hesitancy in holding that the insured is bound by the quoted provision from the supplement. The only question remaining is whether a fire hydrant can be fairly described as an "appliance." The city maintains that "appliance" is such a broad and general term that it can either include or exclude almost everything, depending on how it is used. The company maintains that the term is well understood, has been defined many times in the courts, and though "fire hydrant" has not been defined, the general concept of appliance would bring it within the fold. Appellant cites *State Farm Fire & Casualty Co. v. MacDonald,* 87 Ill. App.2d 15, 20, 230 N.E.2d 513, where the court said: "It is beyond dispute that the meaning of the phrase, 'other than activities therein which are ordinarily incident to non-business pursuits' is unclear, ambiguous, * * *." This lack of clarity was resolved in favor of the insured. We have no criticism of this result but fail to see how it helps us in determining if a fire hydrant is an "appliance."

The company cites several cases in which the Illinois courts have applied the word "appliance" to particular objects. Of these the holding in *Pullman Palace Car Co. v. Laack,* 143 Ill. 242, 32 N.E. 285, where a stopcock, pipe and valve were regarded as appliances is most nearly in point. In *Murray v. Royal Indemnity Co.* (1956), 247 Iowa 1299, 78 N.W.2d 786, the court held that a common garden hose which burst after the insured shut off the water at the nozzle but failed to turn it off at the faucet was an appliance within an exclusion of his insurance policy. Courts have followed the dictionary definition that an appliance is an apparatus or

device used as a means to an end. (*J. E. Bernard & Co. v. United States* (Cust. Ct. 1968), 282 F.Supp. 476; *Agnesia v. State* (1950), 35 Ala.App. 264, 45 S.2d 712.) In *Alcorn v. Deckebach* (1928), 31 Ohio App. 142, 166 N.E. 597, the court said that a fire hydrant is not an appurtenance of the waterworks department but a discharge pipe connected with the water main particularly for use in extinguishing fires. The court said: "A hydrant * * * can no more be considered within the design of a waterworks purpose than the hose which is attached to the hydrant, or the fire engine which is attached to the hose, or the *other apparatus* which may be used in connection therewith * * *." (Emphasis added.) Webster's New International Dictionary states that "an appliance is a piece of apparatus." Hence, by strong inference *Alcorn* seems to say that a fire hydrant is an appliance.

■■ It may be that in using the term "appliance," situations will arise where its applicability is unclear, but in the case before us we have no difficulty in determining that a fire hydrant is an "appliance" to facilitate a particular water usage.

We find it unnecessary to consider the company's argument that the city is immune from suit.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.